# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SANDRA DENISE SMITH,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV-10-BE-2231-S |
| **MICHAEL J. ASTRUE** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 26, 2007, the claimant, Sandra Denise Smith, applied for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. (R. 48, 49). The claimant alleges disability commencing on January 1, 2007 because of asthma, back and neck problems, and high blood pressure. (R. 48, 49, 105). The Commissioner denied the claims both initially and on reconsideration. *Id.* The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on August 27, 2009. (R. 33, 64). In a decision dated November 6, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits and supplemental security income. (R. 5, 14). On June 18, 2010, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her

administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II.  ISSUES PRESENTED

In this appeal, the claimant argues that the Commissioner erred by discounting the opinion of one treating physician and relying on the opinion of another treating physician. Alternatively, the claimant presents the issue of whether this court should remand the case for further actions in light of medical records not present in the certified record.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look

only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

In cases where the claimant has introduced new evidence subsequent to the ALJ's determination, this court determines *de novo* whether to remand the case for consideration of the additional evidence. *Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986) (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir. 1985)).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must give the testimony of a treating physician substantial or considerable weight unless the ALJ finds "good cause" to the contrary. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ may discount a treating physician's report when it is not accompanied by objective medical evidence or is wholly conclusory. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Under 42 U.S.C. § 405(g), a court reviewing the Commissioner's decision "is limited to the certified administrative record in examining the evidence." *Ingram v. Astrue*. 496 F.3d 1253, 1268 (11th Cir. 2007) (quoting *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir 1986)). A court should remand a case to the Commissioner for consideration of additional evidence pursuant to sentence 6 of § 405(g) if the claimant establishes the following: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder*, 791 F.2d at 877. *See Ingram*. 496 F.3d at 1267.

### V. FACTS

The claimant was forty-eight years old at the time of the ALJ hearing and reports a tenth grade education. (R. 37, 109). Her past work experience includes employment as a housekeeper at a hotel and nursing home. (R. 106, 112). The claimant alleged disability beginning on January 1, 2007 because of asthma, high blood pressure, and back and neck problems. (R. 105). The back and neck injuries resulted from moving a table in December 2006. (R. 38-39, 105). She has

4

not worked since January 1, 2007 and is currently insured for disability insurance benefits through December 31, 2011. (R. 10, 101, 105).

*Physical Limitations*

In December 2006, the claimant sustained neck and back injuries while moving a table. (R. 10, 38-39, 105). On March 1, 2007, Dr. Shane Buggay, the treating orthopedic specialist, performed discectomy and fusion surgery of the C4-7 vertebrae. (R. 269, 277). On April 2, 2007, the claimant complained of neck pain, and on April 4, 2007, she received cervical facet injections. (149, 153). In Dr. Buggay's notes, the claimant reported that the facet blocks "helped her greatly," though with some shoulder pain and stiffness. (R. 153, 212). Dr. Buggay also recommended "permanent restrictions of light work." (R. 212). In other notes, Dr. Buggay found the claimant had normal gait and stance, 5/5 strength in her upper extremities, negative Hoffman reflex, and some mild limitations in neck motion. (R. 214). The evaluations of disability examiner Ms. Stewart and medical consultant Dr. Hancock supported Dr. Buggay's observations. (R. 228-31, 238-39, 243).

Dr. Buggay reviewed the claimant's cervical spine MRI performed on June 18, 2007. This test showed "residual foraminal stenosis" and "no significant core impingement," though the doctor noted continued left-side neck and shoulder pain as well as lower back pain. (R. 219, 331, 343). The MRI of the claimant's lumbar spine performed on July 5, 2007 showed "[d]egenerative changes of the lumbar spine primarily involving the facets" and "no disc herniation, central canal or neural foraminal stenosis." (R. 341, 348). A week later, she reported extreme back pain and received lumbar epidural steroid injections on July 13, 2007. (R. 314). Throughout the record, Drs. Farris, Buggay, and Miller prescribed the claimant consistent levels

5

of lortab and flexeril. (R. 208, 217, 245, 337, 344).

In July 2007, the claimant received notice from the Social Security Administration that acknowledged her inability to work but denied her claim because she was expected to improve within 12 months. (R. 55). In 2008, the claimant began appointments with primary care physician Dr. Miller who described her condition as chronic back pain, recommended physical therapy, and referred her to Dr. Schuster for pain management sessions in addition to the prescription medicine. (R. 248-50). After three no-shows, Dr. Miller did not reschedule the claimant for any more pain clinic appointments. (R. 385).

On March 20, 2008, the claimant went to the emergency room for severe back pain. X-rays performed on May 5, 2008 showed no acute injury with the cervical spine and normal lumbar spine. (R. 258). The cervical MRI performed on November 4, 2008 showed a narrowing of the central canal, a slight disc bulge, "mild stenosis," and "minimal extrinsic compression on cord." (R. 264). On May 18 2009, x-rays showed "mild degeneration" of the lumbar spine. The MRI performed on June 9, 2009 showed spondylosis and foraminal narrowing, mild spinal stenosis, slight indention of the cervical cord, and "foci of increased signal." (Plaintiff's Brief Exhibit A). On July 30, 2009, Dr. Miller completed an evaluation that stated the total number of hours the claimant could sit during an entire 8-hour day was 4 and the hours she could stand was 2 for a total of 6 hours. (R. 380).

The certified administrative record does not include documentation of the MRI performed on June 9, 2009. The Plaintiff's Brief states that the claimant submitted two sets of medical records on August 26, 2009, the day before the ALJ hearing. (Plaintiff's Brief at 8). The administrative record includes the medical records dated February 4, 2009 to August 4, 2009 as

Exhibit 18F, but not the records submitted to this court dated February 4, 2009 to June 9, 2009 that includes the MRI performed on June 9, 2009. The Plaintiff's Brief suggests that the missing set of records was mistaken for duplicate records. (Plaintiff's Brief at 8).

After the ALJ's decision, the claimant's brief submitted to the Appeals Council refers to the missing June 9, 2009 MRI "which the ALJ did not report." (R. 142). The brief references Exhibit 18F for the missing MRI. (R. 142). Exhibit 18F is the set of medical records dated from February 4, 2009 to August 4, 2009 in the current administrative record, and this set of medical records does not contain the MRI in question. (R. 383-388; Plaintiff's Brief 8). In its denial, the Appeals Council did incorporate additional evidence into the record, but none of the new exhibits included the medical records dated February 4, 2009 to June 9, 2009 with the missing MRI.

Over an extended period of time, the claimant received treatment for her asthma and hypertension with inconsistent compliance with medication regimens for these conditions. (R. 168-206, 249–52, 261, 385-88). During 2005-2007, primary physician Dr. Farris treated the claimant by prescribing medication for asthma and hypertension, but on April 25, 2007 he notes the asthma is "poorly controlled due to lapse of medications" and counsels her regarding consistently using the medication for hypertension. (R. 168-89). The claimant missed enough appointments with Dr. Farris to prompt a letter requesting notification of future no-shows or he would discontinue service to her. (R. 168). The doctor consistently refers the claimant to Dr. Siegel to evaluate her hepatitis C, but the record does not show compliance with any treatment. (R. 168-89). Later, Dr. Miller continued the treatments for asthma and hypertension and also noted the inconsistent compliance with the medication. (R. 248-65, 385-88).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 50, 56, 64, 65, 67). At the hearing, the claimant testified that she had pain in her neck and back. (R. 40). She reported that the pain in the neck radiated from her shoulders to her hands, affecting her ability to lift or hold things, and the pain in her back radiated to her legs, affecting her ability to walk. (R. 40-41).

On a scale of one to ten, the claimant testified her pain normally reached a level of eight. She testified that normally she can sit only 10 to 15 minutes before getting up and that she can stand only 10 to 15 minutes before she has to sit down because of the pain. (R. 42). She reported that her children help her with activities such as cooking food, doing housework, and taking baths. (R. 44). Out of a nine-hour day, she testified she lies down a good eight hours because of the pain. (R. 42).

A vocational expert, Mr. Zanskas, testified concerning the type and availability of jobs the claimant was able to perform. (R. 45-47). He stated that the <u>Dictionary of Occupational Titles</u> classifies the claimant's past position as a hotel housekeeper as unskilled light-level work. (R. 46). The ALJ asked Mr. Zanaskas if the claimant could do that kind of work if limited to "lifting 20 pounds occasionally and 10 pounds frequently; sitting for four hours in an eight-hour work day; standing for two hours in an eight-hour workday . . . standing/walking combined; never working around hazardous machinery, dust, allergen, fumes, et cetera." (R. 46). Mr. Zanaskas answered no and stated that the inability to work an eight-hour day would prevent her from doing any kind of work. (R. 47).

*The ALJ's Decision*

On November 6, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 14). The ALJ did find the claimant met the insured status requirements of the Social Security Act through December 31, 2011, and the claimant had not engaged in substantial gainful activity since the alleged onset of her disability on January 1, 2007. (R. 10). The ALJ also found the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine (status post cervical discectomy and fusion), asthma, hypertension, and hepatitis C. (R. 10). However, the ALJ concluded these impairments did not singly nor in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 11).

The ALJ next considered the claimant's subjective allegations of pain and other symptoms. He determined that she had "the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. 11). The ALJ found that the impairments "could reasonably be expected to cause the alleged symptoms," but the claimant's assertions were not credible regarding their "intensity, persistence and limiting effects" beyond the ALJ's assessment of her residual functional capacity. (R. 12).

The ALJ supported his assessment by stating objective medical evidence available in the record and giving controlling weight to the opinion of Dr. Buggay, the treating orthopedic specialist who recommended a permanent restriction to light work for the claimant. One of the claimant's primary physicians, Dr. Miller, stated in an evaluation that the total number of hours the claimant could sit or stand during an entire 8-hour day was 6 hours, but the ALJ found Dr.

Miller's evaluation of the claimant's physical limitations to be "overly restrictive in light of the objective medical evidence." (R. 13, 380). The ALJ considered two sets of x-rays and one MRI. X-rays from May 5, 2008 showed "no evidence of acute injury" with the cervical spine or anything abnormal with the lumbosacral and thoracic spine. (R. 12). The MRI on November 4, 2008 "showed '...minimal extrinsic compression on the cord and mild central stenosis'" without an inflammatory response. (R. 12). The last objective medical evidence the ALJ reviewed were x-ray results from May 18, 2009 that showed "only 'mild degenerative changes' of the lumbar spine and a 'normal' pelvis." (R. 12). "The bone graft in the cervical spine is described as having alignment which is 'near-anatomical.'" (R. 12-13). The ALJ did not consider the MRI performed on June 9, 2009, which was not in the administrative record.

  The ALJ also supported his assessment by stating evidence pertaining to the credibility of the claimant's testimony and the claimant's treatment history. The ALJ noted how the claimant's statements at the hearing were not totally consistent with her answers to a questionnaire dated May 16, 2007. (R. 12). The ALJ also found that the medical records indicate the usage of pain medication after the surgery with little, if any, increase in dosage. (R. 12). The ALJ discerned indication of some participation in physical therapy but no records that showed the results of the therapy. (R. 12). However, the ALJ did find a history of no-shows for pain management appointments along with primary care appointments. (R. 12).

  With the residual functional capacity assessment, the ALJ found the claimant capable of performing her past relevant work as a hotel housekeeper, which the vocational expert had categorized as light work. The ALJ considered the claimant's other impairments but did not find limitations that significantly impacted the residual functional capacity assessment of limited

light work. Based on these findings, the ALJ concluded the claimant was not disabled under the Social Security Act.

## VI. DISCUSSION

**A.     Weight Given to Opinion of Claimant's Treating Physicians**

The claimant argues that the Commissioner erred by discounting the opinion of Dr. Miller and relying on Dr. Buggay's statements instead. The opinions of the treating physicians must be given substantial or considerable weight unless the ALJ finds "good cause" to the contrary. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ may discount a treating physician's opinion when it is not accompanied by objective medical evidence or is wholly conclusory. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Under 42 U.S.C. § 405(g), a court reviewing the Commissioner's decision "is limited to the certified administrative record in examining the evidence." *Ingram v. Astrue*, 496 F.3d 1253, 1268 (11th Cir. 2007) (quoting *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir 1986)).

The ALJ properly relied on the opinion of Dr. Buggay while according little weight to Dr. Miller's opinion. Dr. Buggay stated the claimant should have "permanent restrictions to light work" on April 12, 2007. (R. 212). In contrast, Dr. Miller's medical source statement on July 30, 2009 provided the opinion that the claimant's pain impairment limited her to a total of six hours standing, walking, or sitting in an eight-hour work day. Limiting the claimant to less than eight-hour work days would preclude her from the light work in the ALJ's residual functional capacity assessment. (R. 47). The ALJ found this evaluation of the claimant's physical limitations "overly restrictive in light of the objective medical evidence." (R. 13).

The medical records in the certified record support the ALJ's findings. The available x-

rays and MRI's show "no evidence of acute injury," "mild stenosis," "no inflammatory response," and "mild degenerative changes." The ALJ also noted the consistency in dosage for the claimant's narcotic pain medication since her surgery despite the disparity in time between the two treating physicians' opinions. (R. 12). Though the claimant refers to a MRI performed on June 9, 2009 to support Dr. Miller's opinion, this court cannot consider evidence not in the certified administrative record to review the Commissioner's decision. *See Ingram*, 496 F.3d at 1268. Without objective medical evidence showing more than mild conditions and any significant abnormalities, the ALJ properly found "good cause" for discounting Dr. Miller's opinion that the claimant could not complete a full work day.

On the other hand, the objective medical records do support the ALJ's reliance on Dr. Buggay's opinion. In addition to the tests and consistent drug prescriptions, the claimant received cervical facet injections that she reported "helped her greatly." Though the claimant complained that lumbar epidurals worsened her pain, the claimant failed to show up for three pain management classes over a nine month period, after which Dr. Miller did not reschedule. (12, 385). Dr. Buggay's clinical findings and notes of the claimant found normal gait and stance, 5/5 strength in her upper extremities, negative Hoffman reflex, and some mild limitations in neck motion. (R. 214). The evaluations of disability examiner Ms. Stewart and medical consultant Dr. Hancock are also consistent with Dr. Buggay's observations. (R. 228-31, 238-39, 243). Substantial evidence from the record supports the ALJ giving considerable weight to Dr. Buggay's opinion restricting the claimant to light work.

**B.    Additional Evidence Not Incorporated into the Administrative Record**

In the alternative, the claimant requests remanding the case in light of additional

evidence not incorporated into the administrative record. The claimant references a cervical MRI performed on June 9, 2009 that is part of the medical records dated February 4, 2009 to June 9, 2009 submitted to this court. The claimant alleges this MRI supports the opinion of treating physician Dr. Miller. Because the ALJ discounted Dr. Miller's opinion for a lack of objective medical evidence, the claimant requests remanding the case to incorporate the medical records into the certified record and for the Commissioner to reconsider his decision with all of the available evidence.

For evidence presented for the first time in a reviewing court, section 405(g) sentence 6 of the Social Security Act provides "the sole means" to remand a case to the Commissioner for further consideration. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1267. Remanding a case pursuant to sentence 6 requires the claimant to establish all of the following: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder*, 791 F.2d at 877. *See* 42 U.S.C. § 405(g); *Ingram*. 496 F.3d at 1267. Because the additional evidence is cumulative and not material, the additional evidence does not justify remanding the case to the Commissioner for further review.

Evidence is "non-cumulative" only when the administrative record does not contain similar evidence. *See Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987). The claimant does not explain how the MRI performed on June 9, 2009 differs significantly from similar results already in the administrative record. The cervical MRI performed on June 9, 2009 showed a small disc protrusion along with mild spinal stenosis, spondylosis, foraminal narrowing, and

foci of increased signal. (Plaintiff's Brief Exhibit A). This result does not indicate a marked difference from the previous MRI test performed on November 4, 2008. That test also showed a narrowing of the central canal and a slight disc bulge causing mild stenosis. X-rays performed on May 18, 2009 showed "mild degenerative changes," which corresponds with spondylosis, degeneration of the spine. Though the claimant mentions that foci of increased signal can be related to myelomalacia or a demyelinating process, no medical records submitted to this court confirm these possibilities. With similar results already examined by the ALJ, the additional medical records do not meet the non-cumulative requirement.

To meet the materiality requirement, evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder*, 791 F.2d at 877. Though the MRI performed on June 9, 2009 relates to the pain symptoms acknowledged by the ALJ, this evidence does not indicate test results significantly different from those previously considered by the ALJ. Without new results to consider, the Commissioner has no reason to alter his decision and the additional evidence fails to meet the materiality requirement. Because the additional evidence presented by the claimant is cumulative and not material, the evidence does not warrant remanding the case to the Commissioner. Having failed to establish the first two requirements, the court need not consider whether the claimant had "good cause" in this case.

## VII. CONCLUSION

For the above reasons, this court concludes that substantial evidence supports the decision of the Commissioner and that the additional evidence does not satisfy the criteria for remanding the case under sentence six of 42 U.S.C. § 405(g). Therefore, the decision of the Commissioner

is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 26th day of July, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE